IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

RONALD SATISH EMRIT,

                Plaintiff,

    v.

EPIC MEDICAL RECORDS,

                Defendant.

OPINION AND ORDER

18-cv-937-wmc

_____

    *Pro se* plaintiff Ronald Satish Emrit filed this lawsuit against defendant Epic Medical Records ("Epic"), claiming that the hospitals that used Epic's programming disclosed his personal medical records in a manner that violated both federal and state law. Specifically, Emrit cites among the bases for his claims: the Health Portability and Accountability Act ("HIPAA"), the Americans with Disabilities Act ("ADA"), Title VII of the Civil Rights Act of 1964, various constitutional amendments, and state law. Even construing Emrit's allegations generously and in his favor, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the court must dismiss this lawsuit for failure to state a claim upon which relief can be granted in federal court.

ALLEGATIONS OF FACT[1]

    To begin, Emrit resides in Nevada. While he claims that he is indigent, disabled, homeless and unemployed, he names "Epic Medical Records" as the sole defendant.[2] Emrit

---

[1] For screening purposes, the court assumes the following facts based on the allegations in plaintiff's complaint.

[2] In the body of his complaint, Emrit alleges that Epic is a "governmental agent on the state level known professionally as Governor Kim Reynolds." (Compl. (dkt. #1) 3.) Emrit does not explain

also affirmatively alleges that he has at least three diagnosed psychiatric conditions: bipolar disorder, schizoaffective disorder and post-traumatic stress disorder ("PTSD").

More specifically, Emrit alleges that he was hospitalized in the psychiatric ward at Regions Hospital in St. Paul, Minnesota, and a doctor inappropriately discharged him because he was homeless. Emrit was subsequently hospitalized in another hospital in Minneapolis, Minnesota, Hennepin County Medical Center, where he allegedly learned that Epic had shared his medical records from Regions Hospital. Emrit next claims that he was prematurely discharged from Hennepin County because of the information in his medical records from Regions Hospital. Indeed, Emrit was apparently, subsequently discharged from multiple other hospitals, which he also attributes to Epic's system having inappropriately allowed for disclosure of his records from Regions Hospital.

Eventually, Emrit was able to receive comprehensive treatment, but now claims that he was unnecessarily subjected to interrogations by psychiatrists and assessors in Iowa and Minnesota, also because of Epic's disclosure of his records. Emrit further alleges that he does not remember authorizing the hospitals and doctors involved to share his personal medical information through Epic. Finally, he alleges that even if he consented, it would only have been because he was under duress or sedated.

OPINION

Before screening his claims, the court notes that Emrit has filed no fewer than *200* civil actions in federal district courts since 2013, and the Middle District of Florida has

---

the affiliation between Reynolds and Epic, and it is unclear why he would include the governor of Iowa as an agent for a private entity, much less a defendant in this Wisconsin lawsuit.

2

issued a "Vexatious Litigant Order" in a case he filed there, barring Emrit from filing any new document in that district without first obtaining written approval of its Senior Magistrate Judge. *Emrit v. Devos*, 20-cv-773, dkt. #11 (M.D. Fla. Apr. 20, 2020). Moreover, many of Ermit's other actions have been dismissed as frivolous, malicious or for failure to state a claim. *E.g.*, *Emrit v. Cheap-O-Air*, No. 13-cv-803 (D. Md. April 1, 2013); *Emrit v. Viacom/MTV*, No. 13-cv-4909 (S.D.N.Y. July 25, 2013); *Emrit v. Office Depot*, No. 13-cv-80750 (S.D. Fla. Aug. 7, 2013); *Emrit v. Nat'l Academy of Recording Arts & Sciences*, No. 13-cv-5050 (S.D.N.Y. Aug. 19, 2013); *Emrit v. Washington State Bar Ass'n*, No. 13-cv-1389 (W.D. Wash. Sept. 10, 2013); *Emrit v. Nat'l Academy of Recording Arts & Sciences*, No. 13-cv-4742 (S.D.N.Y. Sept. 30, 3013); *Emrit v. Viacom/MTV*, No. 13-cv-4741 (S.D.N.Y. Oct. 15, 2013); *Emrit v. Nat'l Academy of Recording Arts & Sciences*, No. 13-cv-4736 (S.D.N.Y. Jan. 28, 2014); *Emrit v. AOL Time Warner, Inc.*, No. 14-cv-314 (S.D.N.Y. Feb. 14, 2014); *Emrit v. Archdiocese of Miami*, No. 14-cv-20910 (S.D. Fla. March 11, 2014); *Emrit v. Miami-Dade Cnty. Pub. Hous. and Cmty. Dev.*, No. 14-cv-20890 (S.D. Fla. March 12, 2014); *Emrit v. Sarasota Housing Auth.*, No. 14-cv-565 (M.D. Fla. April 22, 2014).

Although not similarly subject to immediate dismissal as frivolous, this lawsuit must be dismissed as well because Emrit has failed to state a claim upon which relief can be granted. To start, Emrit cannot proceed against Epic under 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the alleged violation was committed by a person acting under color of law. *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citing *Kramer v. Village of North Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004)). Emrit's complaint about the disclosure of his medical records neither

3

implicates rights that could afford him relief under a federal statute, nor may Emrit pursue a claim under HIPAA against Epic, since that statutory scheme does not create a private cause of action or enforceable right for purposes of suit under 42 U.S.C. § 1983. *Carpenter v. Phillips*, 419 F. App'x 658, 659 (7th Cir. 2011).

Although Emrit references constitutional rights to due process and equal protection under the Fifth and Fourteenth Amendments of the U.S. Constitution, he does not allege any facts suggesting that he was discriminated against because of his membership in a suspect class, nor that he was denied due process of law. Moreover, Emrit does not allege any facts suggesting that Epic had any specific involvement in the challenges Emrit faced in obtaining hospital treatment for his mental health issues.

Even assuming that the "Epic Medical Records" Emrit names in the caption of his complaint refers to Epic Systems, Inc., it is a private entity, and thus, not operating under color of state law as required for liability under § 1983. Emrit appears to recognize as much by claiming that Epic should be considered a "quasi-governmental agency," apparently because psychiatric wards take on patients that have been detained by the police or ordered to undergo a psychiatric evaluation. However, private corporations may only be held liable under § 1983 when they have "contracted to provide essential governmental services," and even then, only when "the constitutional violation was caused by an unconstitutional policy or custom of the corporation itself." *Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014).[3] Given that Emrit has not alleged that Epic has

---

[3] Even assuming Emrit wishes to proceed against Iowa Governor Reynolds individually, he still cannot, having failed to allege that Reynolds was personally involved in any of the events related to the disclosure of his medical records. *See Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010) ("[I]ndividual liability under § 1983 requires 'personal involvement in the alleged constitutional deprivation.'" (quoting *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003))).

contracted with any governmental entity to provide programming services to the hospitals that allegedly shared his medical records, Epic is not a suable entity under § 1983.

Nor do Emrit's alleged experiences in various Minnesota hospitals suggest that he can state a claim for relief under the ADA or Title VII. Title VII of the Civil Rights Act of 1964 prohibits discrimination by employers on the basis of race, color, religion, gender or national origin, 42 U.S.C. § 2000e *et seq.*, and Title I of the ADA prohibits employers from discriminating against a qualified individual on the basis of a disability, 42 U.S.C. § 12112(a). Here, Emrit neither alleges that he was discriminated against by an employer because of his membership in a protected class, nor because of a disability, so he may not proceed on a claim under either Title VII of the Civil Rights Act of 1964 or Title I of the ADA.

In fairness, Title II of the ADA is not tied to employment and provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Even putting aside the fact that Epic is not a public entity, Emrit has not alleged that Epic was responsible for the decisions of various Minnesota hospitals to discharge him. In any event, Emrit has not alleged that he was denied services or programs *because of* his disability. As such, Emrit may not proceed under Title II of the ADA either.

Title III of the ADA also prohibits discrimination against individuals on the "basis of disability in the full and equal enjoyment of . . . any place of public accommodation by any person who owns" it. 42 U.S.C. § 12182(a). To state a claim for violation of this provision of the ADA, however, a plaintiff must allege "that: (1) he is disabled; (2)

5

defendant is a 'private entity' which owns, leases or operates a 'place of public accommodation'; and (3) he was denied the opportunity to participate in or benefit from services or accommodations on the basis of his disability." *Torrence v. Advanced Home Care, Inc.*, No. 08-cv-2821, at *3, 2009 WL 1444448 (N.D. Ill. May 21, 2009). Moreover, injunctive relief is the *only* remedy authorized for parties suing under the ADA for discrimination in public accommodations. 42 U.S.C. § 12188(a)(1).

In short, Emrit appears to believe that he was not allowed access to various hospitals because of Epic's disclosure of his medical records. However, Emrit has not alleged that Epic owned, leased or operated any of the hospitals from which Emrit was discharged. Furthermore, Emrit's allegations do not permit an inference that he was denied any services or accommodations from these hospitals *because* of Epic's disclosure of his medical records. Accordingly, Emrit's allegations do not support a claim under any of the provisions of the ADA or any other federal law.

Finally, Emrit may not proceed on his proposed state law claims for breach of contract and negligence under this court's diversity jurisdiction. As a threshold matter, Emrit's allegations do not establish this court's diversity jurisdiction, which is his burden as the party invoking this court's jurisdiction. *Edgewood Manor Apartment Homes, LLC v. RSUI Indem. Co.*, 733 F.3d 761, 771 (7th Cir. 2013). Under 28 U.S.C. § 1332, diversity jurisdiction is present where the matter in controversy exceeds the sum or value of $75,00, and complete diversity between the parties exists.

Here, Emrit has properly alleged the amount in controversy, but he has not alleged sufficiently detailed information to determine whether diversity between the parties exists. He alleges that Epic's principal place of business is in Wisconsin, which is sufficient for the

6

court to accept that Epic is a citizen of Wisconsin. *See* 28 U.S.C. § 1332(c) (a corporation is deemed a citizen of both the state in which it is incorporated and the state where its principle place of business is located). Emrit further alleges that he is a homeless resident of Nevada, and that his current mailing address is in Florida, but "[a]n allegation of residence is not sufficient to establish citizenship, which requires domicile." *Winforge, Inc. v. Coachmen Indus., Inc.*, 691 F.3d 856, 867 (7th Cir. 2012). As such, a question remains as to Emrit's state of citizenship. Normally, the court would require Emrit to submit an amended complaint that clarifies his state of domicile, but because his allegations do not support a claim for relief, the court will dismiss this action instead.

Indeed, assuming that Minnesota law would apply to Emrit's state law claims because that is where he was allegedly denied treatment, to prevail on a breach of contract claim, a plaintiff must prove (1) the formation of a contract, (2) performance by the plaintiff of any conditions precedent to the right to demand performance by the defendant, (3) breach of the contract by the defendant, and (4) damages resulting from the breach. *Sound of Music Co. v. Minnesota Min. & Mfg. Co.*, 477 F.3d 910, 915 (7th Cir. 2007) (citations omitted). Since Emrit has failed to allege facts pertaining to any of the four elements of a breach of contract claim against Epic, he has failed to state a breach of contract claim.

Similarly, the elements of a Minnesota negligence claims are: "(1) the existence of a legal duty; (2) a breach of that duty; (3) causation; and (4) injury." *Moorhead Econ. Dev. Auth. V. Anda*, 789 N.W.2d 860, 888 (Minn. 2010). Even assuming that Epic owed Emrit a legal duty to prevent disclosure of his medical records without his consent, he has not alleged *how* Epic breached that duty and was somehow responsible for disclosing his

records. Furthermore, Emrit claims that if he did provide consent for the sharing of his medical records, he did so under duress or coercion while he was being treated. This would suggest that certain individuals working at the hospital, *not* for Epic, were responsible for any unauthorized disclosure of his medical records.

Ultimately, since Emrit has not alleged any facts suggesting that Epic's programming was somehow responsible for forcing Emrit's consent, it would be unreasonable to infer that Epic breached a duty of care. Even more attenuated is the causation element. Emrit seems to believe that the sharing of his medical records caused treatment providers to refuse him needed psychiatric care. However, Emrit has not alleged that Epic, or any of its employees, was responsible for the content of those records or for the consequential denial of psychiatric health treatment for Emrit.

Thus, to the extent Emrit believes that his medical care in Minnesota was mishandled, therefore, he would need to pursue relief in a Minnesota state or federal court, and the latter only if he could satisfy the requirements for diversity jurisdiction. As for this case against Epic, however, Emrit has failed to state a claim -- under federal or state law -- upon which relief can be granted. Typically, the court would allow *pro se* plaintiffs like Emrit the opportunity to cure the deficiencies in the complaint before dismissing the action. *See Luavano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1022 (7th Cir 2013). However, since the court cannot envision a scenario in which he would be able to articulate a federal or state law claim against Epic in this district, the court will dismiss this action for failure to state a claim.

8

ORDER

IT IS ORDERED that this lawsuit is dismissed for failure to state a claim upon which relief can be granted.

Entered this 13th day of December, 2021.

BY THE COURT:

/s/

WILLIAM M. CONLEY
District Judge